UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.  **DECISION AND ORDER**
 11-CR-359S

CHAD A. SALVATORE,

                Defendant.

## I. INTRODUCTION

Presently before this Court is Defendant Chad A. Salvatore's pro se Motion for Compassionate Release, which the government opposes. See 18 U.S.C. § 3582(c)(1)(A). For the reasons below, Salvatore's motion is denied.

## II. BACKGROUND

On June 26, 2012, Salvatore pleaded guilty to the 8-count indictment against him without the benefit of a plea agreement. (Docket No. 47.) The indictment charged seven counts of distribution and receipt of child pornography in violation of 18 U.S.C. § 2252A(a)(2)(A), and one count of obstruction of justice in violation of 18 U.S.C. § 1519. (Docket No. 27.) In early 2013, this Court sentenced Salvatore in the aggregate to 240 months' imprisonment, lifetime supervised release, an $800 special assessment, and no fine, fees, or costs. See Docket Nos. 62, 63, 67. The United States Court of Appeals for the Second Circuit subsequently affirmed the judgment of conviction and sentence on June 10, 2014. See United States v. Salvatore, 568 F. App'x 76 (2d Cir. 2014) (summary order). Salvatore is presently serving his sentence at FCI Loretto, with an anticipated

1

release date of January 29, 2028.[1]

On January 31, 2024, Salvatore moved for compassionate release (sentence reduction) under 18 U.S.C. § 3582 (c)(1)(A)(i). (Docket Nos. 78, 81.) Salvatore argues that his susceptibility to COVID-19, his pandemic-related harsh conditions of confinement, his rehabilitation, and his need to care for his ailing father, considered singly or in combination, constitute extraordinary reasons warranting relief. The government opposes the motion. (Docket No. 80.)

## III. DISCUSSION

### A.    Compassionate Release under 18 U.S.C. § 3582 (c)(1)(A)(i)

"A court may not modify a term of imprisonment once it has been imposed except pursuant to statute." United States v. Gotti, 433 F. Supp. 3d 613, 614 (S.D.N.Y. 2020). One such statute is 18 U.S.C. § 3582 (c)(1)(A)(i) which, as amended by the First Step Act of 2018,[2] provides as follows:

> The court may not modify a term of imprisonment once it has been imposed except that—in any case—the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553 (a) to the extent that they are applicable, if it finds

---

[1] See Federal Bureau of Prisons Inmate Locator, https://www.bop.gov/inmateloc/ (last visited April 10, 2024).

[2] Congress amended 18 U.S.C. § 3582 (c)(1)(A) in the First Step Act of 2018 to allow prisoners to bring their own motions for compassionate release. See Pub. L. No. 115-391, 132 Stat. 5194, 5222 (2018). The previous version of the statute permitted only the Bureau of Prisons to bring compassionate-release motions. See, e.g., United States v. Monzon, 611 F. Supp. 3d 1, 2 n.1 (S.D.N.Y. 2020) (explaining the First Step Act amendment); United States v. Gotti, 433 F. Supp. 3d 613, 614-15 (S.D.N.Y. 2020) (same).

> that—(i) extraordinary and compelling reasons warrant such a reduction; . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

The defendant carries the burden of showing that he or she is entitled to a sentence reduction under the statute. See United States v. Ebbers, 432 F. Supp. 3d 421, 426-27 (S.D.N.Y. 2020). A defendant proceeding on his or her own motion may meet that burden by demonstrating (1) that he or she satisfied the statutory exhaustion requirement, (2) that extraordinary and compelling reasons exist for a sentence reduction, and (3) that a sentence reduction is warranted after consideration of the applicable 18 U.S.C. § 3553 (a) factors and consistent with any applicable Sentencing Guidelines provisions. See 18 U.S.C. § 3582 (c)(1)(A)(i); United States v. Perez, 451 F. Supp. 3d 288, 291 (S.D.N.Y. 2020); United States v. Gileno, 448 F. Supp. 3d 183, 185 (D. Conn. 2020).

The statutory exhaustion requirement is not jurisdictional, but rather, is a claim-processing rule that may be waived or forfeited by the government. See United States v. Saladino, 7 F. 4th 120, 121-124 (2d Cir. 2021) (per curiam). If invoked, however, the exhaustion requirement must be enforced because it is a mandatory claim-processing rule. See id. at 125 (Menashi, J., concurring); see also United States v. Schultz, 454 F. Supp. 3d 217, 223-24 (W.D.N.Y. 2020). The exhaustion requirement is met when the earlier of two circumstances occurs: (1) the defendant fully exhausts all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion to modify an imposed term of imprisonment on his or her behalf,[3] or (2) 30 days lapse from the date the warden

---

[3] The Scparta court explained the administrative process before the Bureau of Prisons as follows:

> First, an inmate must request the warden of her facility to file a compassionate-release motion on her behalf. 28 C.F.R. § 571.61 (a). Second, if the warden denies the prisoner's request, she has 20 days to

of the defendant's facility receives the defendant's request to file such a motion on his or her behalf.  See 18 U.S.C. § 3582 (c)(1)(A).

Congress initially delegated to the Sentencing Commission the task of "describ[ing] what should be considered extraordinary and compelling reasons for sentence reduction" under 18 U.S.C. § 3582 (c)(1)(A)(i).  See 28 U.S.C. § 994 (t).  The Commission, in turn, promulgated a Policy Statement concerning sentence reductions under 18 U.S.C. § 3582 (c)(1)(A) in § 1B1.13 of the United States Sentencing Guidelines.  The Commentary to that section contains four examples of circumstances that constitute "extraordinary and compelling reasons" for a sentence reduction: "Medical Condition of the Defendant"; "Age of the Defendant"; "Family Circumstances"; and "Other Reasons".  See U.S.S.G. § 1B1.13, Application Notes.

But notably, the Second Circuit has held that U.S.S.G. § 1B1.13 does not apply to compassionate-release motions brought directly by defendants, such as this one, and no longer constrains a district court's consideration of what qualifies as extraordinary and compelling reasons for purposes of such motions.  See United States v. Brooker, 976 F.3d 228, 234-37 (2d Cir. 2020) (holding that U.S.S.G. § 1B1.13 applies only to motions brought by the Bureau of Prisons).  The circuit court further held that "the First Step Act

---

appeal to the BOP's Regional Director.  Id. § 571.63 (a) (providing that denials of compassionate-release requests are governed by the BOP's general Administrative Remedy Program, contained in 28 C.F.R. §§ 542.10-542.19); id. § 542.15 (a) ("An inmate who is not satisfied with the Warden's response may submit an Appeal on the appropriate form (BP-10) to the appropriate Regional Director within 20 calendar days of the date the Warden signed the response.").  Third, if the Regional Director denies the prisoner's request, she then has 30 days to appeal to the BOP General Counsel.  Id. § 542.15 (a).  A decision from the General Counsel is the final step in the BOP's Administrative Remedy Program, id., and therefore "constitutes a final administrative decision," id. § 571.63 (b).

United States v. Scparta, 567 F. Supp. 3d 416, 424 (S.D.N.Y. 2020).

4

freed district courts to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release. Neither Application Note 1(D), nor anything else in the now-outdated version of Guideline § 1B1.13, limits the district court's discretion." Id.; see also United States v. Jones, 17 CR 214 (CM), 2021 WL 4120622, at *1-2 (S.D.N.Y. Sept. 9, 2021).

As to the required consideration of the 18 U.S.C. § 3553 (a) factors, they include, *inter alia*, the nature and circumstances of the offense; the history and characteristics of the defendant; the need for the sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, and protect the public from future crimes by the defendant; and the need to avoid unwarranted sentencing disparities. See 18 U.S.C. § 3553 (a). Included in this calculus is whether the defendant may pose a danger to the safety of any person or to the community if released (the need to protect the public from future crimes).

Finally, district courts have broad discretion in deciding whether to grant or deny motions for sentence reduction. See Gileno, 448 F. Supp. 3d at 186.

**B.    Salvatore's Motion for Compassionate Release**

   **1. Exhaustion of Administrative Rights**

As indicated above, 18 U.S.C. § 3582 (c)(1)(A) contains an exhaustion requirement. To satisfy this requirement, a defendant must demonstrate that either (1) he or she fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion to modify an imposed term of imprisonment on his or her behalf, or (2) 30 days have lapsed from the date the warden of the defendant's facility received the defendant's request to file such a motion on his or her behalf. See 18 U.S.C. § 3582

(c)(1)(A).

Here, the record reflects that Salvatore has exhausted his administrative rights, and the government does not contend otherwise. See Motion for Compassionate Release, Exhibit A, Docket No. 78-1 (Inmate Request to Staff). This Court therefore finds that exhaustion is complete.

**2. Extraordinary and Compelling Reasons for Sentence Reduction**

Salvatore contends that his susceptibility to COVID-19, his pandemic-related harsh conditions of confinement, his rehabilitation, and his need to care for his ailing father, considered singly or in combination, constitute extraordinary reasons warranting a sentence reduction or immediate release. None of these arguments are compelling.

Salvatore first argues that his age (51), obesity, cardiac condition, and depression make him particularly susceptible to serious illness from COVID-19, and that the Bureau of Prisons is unable to control the spread of the virus at FCI Loretto. The government does not contest the existence of Salvatore's medical conditions or the premise that they place him at increased risk for serious illness from COVID-19, but it maintains that the Bureau of Prisons is adequately managing COVID-19 at FCI Loretto.[4]

While the risks associated with the pandemic have surely warranted release in many cases, they do not here. To begin, Salvatore admits that he has been vaccinated against COVID-19. See Defendant's Reply, Docket No. 81, p. 1. This decreases his chances of serious illness from the virus, notwithstanding his medical conditions. See, e.g., United States v. Rudkin, Crim. No. 3:08-cr-177 (AWT), 2021 WL 2109182, at *1 (D.

---

[4] See Centers for Disease Control and Prevention, People with Certain Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited April 10, 2024).

6

Conn. May 25, 2021) (finding "the fact that the defendant has been vaccinated means that his medical conditions no longer support a conclusion that the more severe illness or death from COVID-19 presents an extraordinary and compelling reason warranting reduction of his sentence"); United States v. Hines, 17-CR-364-2 (CS), 2021 WL 2077982, at *2 (S.D.N.Y. May 24, 2021) (finding that inoculation weighs against a finding of extraordinary and compelling reasons for a sentence reduction based on medical conditions).

Moreover, Salvatore's medical records reveal that he twice contracted and recovered from COVID-19. This is significant since "the main point of releasing an individual is to decrease the person's chance of contracting COVID-19," see United States v. Rodriguez, No. 19-CR-64, 2020 WL 4581741, at *2 (D. Conn. Aug. 10, 2020), and because it demonstrates that COVID-19 does not pose a serious risk to Salvatore's health, see, e.g., United States v. Hawkins, 16-CR-189 (JMA), 2021 WL 40206, at *2 (E.D.N.Y. Jan. 5, 2021) (denying compassionate release to defendant who contracted a non-severe case of COVID-19); United States v. Lindsey, No. 13-CR-271-LTS, 2021 WL 37688, at *3 (S.D.N.Y. Jan. 4, 2021) (finding that "an inmate's having contracted COVID-19, standing alone, does not qualify as an 'extraordinary and compelling" circumstance warranting a reduction in sentence"); United States v. Hardy, No. 11-CR-629, 2020 WL 7711676, at *2 (S.D.N.Y. Dec. 29, 2020) (finding that since the defendant "has contracted and seemingly weathered the disease, a sentence reduction based on the risk of contracting it no longer makes sense"); United States v. Delorbe-Luna, No. 18-CR-384, 2020 WL 7231060, at *2 (S.D.N.Y. Dec. 7, 2020) ("[A] defendant's successful recovery from COVID-19 weighs against granting that defendant compassionate release."); United

7

States v. Williams, No. 11-CR-172, 2020 WL 6826740, at *6 (D. Conn. Nov. 20, 2020) (collecting cases); United States v. Mateus, No. 14-CR-504, 2020 WL 5096062, at *4 (S.D.N.Y. Aug. 28, 2020) (finding that defendant who had contracted and recovered from COVID-19 did not demonstrate extraordinary and compelling reasons for release); United States v. Santiago, No. 92-CR-563 (BMC), 2020 WL 4926470, at *2 (E.D.N.Y. Aug. 21, 2020) ("I do not believe that a positive COVID-19 test, even in an individual with risk factors for severe complications or death, constitutes an extraordinary and compelling circumstance in and of itself."); United States v. Perez, No. 04 Cr. 937-1 (NRB), 2020 WL 4677586, at *1 (S.D.N.Y. Aug. 11, 2020) (finding that "contraction of a disease generally does not constitute an extraordinary and compelling basis for release . . . [t]he fact that defendant recovered from COVID-19 further supports this conclusion").

So too, Salvatore's generalized fear of a continuing danger posed by COVID-19 does not constitute an extraordinary and compelling reason for compassionate release. See United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020) ("the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread"); United States v. Nwankwo, No. 12 Cr. 31 (VM), 2020 WL 2490044, at *1-2 (S.D.N.Y. May 14, 2020) ("the risks posed by the pandemic alone do not constitute extraordinary and compelling reasons for release, absent additional factors such as advanced age or serious underlying health conditions that place a defendant at greater risk of negative complications from the disease"); United States v. Eberhart, 448 F. Supp. 3d 1086, 1090 (N.D. Cal. 2020).

Finally, Salvatore fails to demonstrate that FCI Loretto is unable or unwilling to respond to the threat of COVID-19. As of this writing, there are just three positive inmate cases.[5] The Bureau of Prisons is thus responding to the threat of COVID-19, which again, poses reduced risk to Salvatore since he has received at least one vaccine and has twice recovered from the virus. In any event, as this Court and others have found, the mere *possibility* of contracting a communicable disease such as COVID-19, without any showing that the Bureau of Prisons will not or cannot guard against or treat such a disease, does not constitute an extraordinary or compelling reason for a sentence reduction under the statutory scheme. See United States v. Scott, 09-CR-341S, 2020 WL 5587122, at *5 (W.D.N.Y. Sept. 18, 2020) (denying compassionate release to defendant in high-risk category who made no showing of Bureau of Prisons failures); United States v. Stevens, 459 F. Supp. 3d 478, 486 (W.D.N.Y. 2020); see also Raia, 954 F.3d at 597 ("the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread"); United States v. Gold, 459 F. Supp. 3d 1117, 1120 (N.D. Ill. 2020) (finding that COVID-19 does not "warrant the release of every federal prisoner with health conditions that make them more susceptible to the disease"); United States v. Gagne, 451 F. Supp. 3d 230, 235 (D. Conn. 2020) (denying compassionate release where the defendant failed to show "that the [Bureau of Prisons] cannot adequately manage the [COVID-19] pandemic or treat her to a reasonable degree"); Gileno, 448 F. Supp. 3d at 188 ("Mr. Gileno has also not shown that the plan proposed by the Bureau of

---

[5] See Federal Bureau of Prisons, https://www.bop.gov/about/statistics/statistics_inmate_covid19.jsp (last visited April 10, 2024).

9

Prisons is inadequate to manage the pandemic within Mr. Gileno's correctional facility, or that the facility is specifically unable to adequately treat Mr. Gileno.").

Next, Salvatore maintains that the harsh conditions of confinement caused by the global COVID-19 pandemic, specifically the lockdowns and other restrictions employed to combat the spread of the disease, constitute an exceptional reason warranting relief. Salvatore does not allege unique conditions that only he suffered. He instead relies on the general circumstances experienced by all inmates, which do not, in this Court's view, constitute extraordinary and compelling circumstances warranting relief. See United States v. Farmer, No. 19-CR-427 (LTS), 2022 WL 47517, at *4 (S.D.N.Y. Jan. 5, 2022) ("While the Court is sympathetic to the poor conditions many prisoners have faced during the pandemic, generalized statements about the conditions of confinement do not constitute compelling reasons for compassionate release."); United States v. Bryant, No. 06-CR-17-LTS, 2021 WL 738838, at *3 (S.D.N.Y. Feb. 24, 2021) (finding that generalized conditions of confinement during the pandemic "are not unique to [defendant] and do not militate strongly in favor of finding there are extraordinary and compelling reasons for a sentence reduction"); cf. United States v. Ramirez, 571 F. Supp. 3d 40, 47 (S.D.N.Y. 2021) ("If the challenging conditions of confinement caused by the pandemic warranted a sentence reduction here, essentially every inmate who has been in BOP custody at any time since March 2020 would be entitled to a sentence reduction."); but see United States v. Lora, 16 Cr. 44-5 (KPF), 2022 WL 1055749, at *5 (S.D.N.Y. Apr. 8, 2022) (finding that "pandemic-induced conditions of confinement *may* constitute 'extraordinary and compelling' circumstances warranting compassionate release, particularly for defendants who have (i) served long sentences and (ii) been detained for the entirety of the

10

pandemic" (emphasis in original)).

Finally, Salvatore argues that compassionate release is warranted due to his extraordinary rehabilitation, demonstrated by his participation in the Teacher Aide Apprenticeship Program and numerous other education and recreational programs. The completion of prison programs, while laudable, does not itself constitute extraordinary rehabilitation, and this Court finds Salvatore's participation in the Teacher Aide program particularly surprising given the nature of his convictions. In any event, rehabilitation efforts alone cannot be considered an extraordinary and compelling reason for a sentence reduction. See 28 U.S.C. § 994 (t); Brooker, 976 F.3d at 234 ("The only statutory limit on what a court may consider to be extraordinary and compelling is that '[r]ehabilitation . . . *alone* shall not be considered an extraordinary and compelling reason.'") (emphasis in original) (quoting 28 U.S.C. § 994 (t)). While Salvatore's efforts at rehabilitating himself should certainly continue, they do not alone or in combination with his other arguments constitute an extraordinary and compelling reason for compassionate release. See United States v. Steele, No. 3:19-cr-65-VLB-2, 2021 WL 2138829, at *7 (D. Conn. May 26, 2021) (finding that "because the other claimed circumstances are unpersuasive and unsupported, [defendant's] rehabilitation cannot be considered an extraordinary and compelling reason"); United States v. Richiez-Castillo, 00-CR-54-RJA, 2021 WL 1746426, at *6 (W.D.N.Y. May 4, 2021) (finding that rehabilitation could not be considered an extraordinary and compelling reason for sentence reduction in the absence of other grounds).

Finally, Salvatore contends in his reply submission that his need to care for his ailing 75-year-old father is an extraordinary and compelling reason to reduce his

11

sentence. While a defendant's status as the only available caregiver to a close family member may, in some circumstances, constitute an extraordinary and compelling reason for a sentence reduction, see, e.g., United States v. Yoda, No. 15 CR 95, 2020 WL 5502325, at *2 (S.D.N.Y. Sept. 11, 2020) ("the need to care for one's aging and sick parent may, in certain circumstances, warrant a finding that an extraordinary and compelling reasons exists"); United States v. Wooten, No. 3:13-cr-18 (SRU), 2020 WL 6119321, at *4 (D. Conn. Oct. 16, 2020) (recognizing grounds for reduction and collecting cases), such is not the case here. Salvatore simply wishes to spend time with his father, whom he concedes is "resid[ing] at a senior living facility where he is monitored regularly by staff." See Defendant's Reply, p. 1.

While this Court understands Salvatore's desire to be with his ill father, he has not established "[c]ircumstances approaching the truly dire," which are necessary to secure a sentence reduction. United States v. Mitchell, 16-CR-34-FPG, 2022 WL 1025032, at *5 (W.D.N.Y. Apr. 6, 2022). Nothing in the record suggests that Salvatore's father requires extraordinary care that only Salvatore can provide. To the contrary, Salvatore's father is safely residing at a senior living facility where he is monitored regularly by trained staff. Salvatore's desire to be with his father simply does not amount to an extraordinary and compelling reason for a sentence reduction. See United States v. Martinez, 10-CR-233S (1), 2022 WL 1089671, at *4 (W.D.N.Y. Apr. 12, 2022) (finding that defendant failed to establish he was only suitable caregiver for mother); United States v. Rollins, 19-CR-34S, 11-CR-251S, 2021 WL 5445772, at *4 (W.D.N.Y. Nov. 22, 2021) (denying compassionate release to defendant who was the preferred, but not only, available caregiver); United States v. Wilson, 10-CR-363S (1), 2021 WL 2327312, at *3-5

12

(W.D.N.Y. June 8, 2021) (denying compassionate release, in part, due to defendant's failure to demonstrate that he was mother's only available caregiver); United States v. Pabon, 17 Cr. 312 (JPC), 2021 WL 603269, at *4 (S.D.N.Y. Feb. 16, 2021) (denying compassionate release for, among other reasons, defendant's failure to show that he was wife's only available caretaker); United States v. Lindsey, No. 13-CR-271-LTS, 2021 WL 37688, at *3 (S.D.N.Y. Jan. 4, 2021) (denying sentence reduction on basis that defendant failed to show that no other family member or other caretaker could provide the necessary care).

Accordingly, for these reasons, this Court finds that Salvatore has failed to demonstrate circumstances, viewed singly or in combination, that constitute an extraordinary and compelling reason for compassionate release.

### 3. Consideration of the § 3553 (a) Factors

Even if Salvatore had demonstrated extraordinary and compelling reasons for a sentence reduction (which he has not), this Court would find that those reasons are greatly outweighed by consideration of the § 3553 (a) factors, and that Salvatore's original sentence would be severely undermined by a sentence reduction. See 18 U.S.C. § 3582 (c)(1)(A) (requiring consideration of the applicable § 3553 (a) factors); see also Ebbers, 432 F. Supp. 3d at 426.

The nature and circumstances of Salvatore's criminal conduct are serious. He used peer-to-peer software and email to receive and to distribute child pornography. See Presentence Investigation Report, Docket No. 66, ¶¶ 24-54. The videos discovered on Salvatore's computer were predominantly of young boys engaged in sexually explicit and deviant conduct with other boys or men, including the rape of a young boy, the sexual

13

violation of an infant, and bestiality. See id. ¶¶ 34, 37, 47. Examination of Salvatore's email account further revealed explicit conversations concerning Salvatore's sexual interest in children. See id. ¶¶ 50-51. In one message, Salvatore requested to have underage boys "pimped" to him in exchange for money. See id. ¶ 50. Salvatore's peer-to-peer chat history reveals multiple attempts to gain access to child pornography and at least one successful attempt to lure a 15-year-old boy into sending sexually explicit videos of himself. See id. ¶ 53. Salvatore also obstructed justice by destroying a media card that contained additional child pornography files. See id. ¶¶ 45, 46

Salvatore's history and characteristics include the divorce of his parents at a young age, a difficult relationship with his stepfather, and struggles with his sexuality. See id. ¶¶ 100-107. He is a 51-year-old man who has never married but has been in a long-term relationship with his partner. See id. ¶ 108. At sentencing, Salvatore reported a cardiac condition but no other significant mental-health diagnoses, physical problems, or substance-abuse issues. See id. ¶¶ 112-120.

In considering the purposes of sentencing, this Court reiterates its previous finding that a 20-year sentence is fair, just, and reasonable, and further finds that the sentence would be severely undermined by any reduction. A reduced sentence would not reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, or protect the public from future crimes by the defendant. See 18 U.S.C. § 3553 (a). A reduction would also result in unwarranted sentencing disparities. Id.

Finally, as to dangerousness, which is considered in conjunction with the need to protect the public from future crimes by the defendant, this Court finds that Salvatore

14

continues to pose a danger to the community. In addition to his consumption of child-pornography videos, his solicitation of young boys to send him sexually graphic videos of themselves, and his interest in having a boy "pimped" to him, Salvatore has a history of hands-on abuse: When he was 17-years-old, Salvatore forcibly raped and sodomized three males aged 10, 12, and 13. See Presentence Investigation Report, ¶¶ 54, 86.

Given the manipulative and predatory nature of Salvatore's past sexual misconduct with minors, this Court finds that Salvatore remains a danger to the community if released. A sentence reduction is therefore precluded on this basis as well. See United States v. Koehn, 10-CR-264S, 2020 WL 4361675, at *8 (W.D.N.Y. July 30, 2020) (finding defendant with history of predatory behavior, including molesting minors, to pose a danger to the community); United States v. Malecki, 17-CR-18S, 2020 WL 4013050, at *7 (W.D.N.Y. July 16, 2020) (finding child pornography defendant who "went to great lengths to cloak his illegal conduct" to be a danger to the community); United States v. Roney, 10-CR-130S, 2020 WL 2846946, at *7-8 (W.D.N.Y. June 2, 2020) (denying compassionate release to child pornography defendant due, in part, to the defendant's history of sexually abusing minors); United States v. Schultz, 17-CR-193S, 2020 WL 2764193, at *8 (W.D.N.Y. May 28, 2020) (denying compassionate release to child pornography defendant due, in part, to "the manipulative and predatory nature of [his] criminal conduct and his history of sexual misconduct"); United States v. Lebrecht, 1:16-CR-166 EAW, 2020 WL 2519721, at *3 (W.D.N.Y. May 18, 2020) (denying compassionate release to child pornography defendant due, in part, to the danger the defendant poses to the community as demonstrated by his on-line chats and other underlying offense conduct).

Accordingly, this Court finds that consideration of the § 3553 (a) factors outweighs any extraordinary and compelling reasons for a sentence reduction that may exist.

## IV. CONCLUSION

For all of the reasons stated above, this Court finds that a sentence reduction (compassionate release) under 18 U.S.C. § 3582 (c)(1)(A)(i) is not warranted. Salvatore's motion will therefore be denied.

## V. ORDERS

IT HEREBY IS ORDERED, that Salvatore's Motion for Compassionate Release (Docket No. 78) is DENIED.

FURTHER, that the Clerk of Court is DIRECTED to send a copy of this decision to Salvatore at his correctional institution of record.

SO ORDERED.

Dated:   April 17, 2024
         Buffalo, New York

                                    s/William M. Skretny
                                    WILLIAM M. SKRETNY
                                    United States District Judge